**In re A.G. WASSEM, Debtor.**

**No. 6:08–bk–05666–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

July 15, 2009.

E. Juan Lynum, Lynum & Associates, Robert B. Branson, Law Office of Robert B. Branson PA, Orlando, FL, for Debtor.

## *ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Motion for Order for Contempt (Doc. No. 43) ("Motion") filed by A.G. Waseem, f/k/a Alton Eugene Glasco, the Debtor herein ("Debtor"), seeking an award of sanctions against Aurora Loan Services, LLC ("Aurora") for violation of the discharge injunction of 11 U.S.C. Section 524(a). An evidentiary hearing was held on May 4, 2009 at which the Debtor and his counsel appeared. No response to the Motion was filed. The Motion is due to be granted for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live proffers and argument, and being otherwise fully advised in the premises.

## *FINDINGS OF FACT*

The Debtor filed this bankruptcy case on July 2, 2008 and listed Aurora in Schedule D (Doc. No. 1) as holding three secured debts: (i) a first priority mortgage of $371,165.00 for a rental property located at 8737 Leland Archer, Windermere, Flori-

da; (ii) a first priority mortgage of $365,000.00 for a rental property located at 280 Dave Trail, Prosper, Texas; and (iii) a first priority mortgage of $355,000.00 for a rental property located at 12035 Eden Lane, Frisco, Texas.

Notice of the Debtor's bankruptcy filing was issued to Aurora on July 10, 2008 pursuant to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Doc. No. 9). The Debtor received a discharge on October 24, 2008 pursuant to the Discharge of Debtor (Doc. No. 33). The Debtor did not reaffirm any debts. The Aurora debts were discharged pursuant to 11 U.S.C. Section 727.

The discharge injunction immediately arose upon entry of the Discharge of Debtor enjoining any and all acts to collect a discharged debt. The Discharge of Debtor advised parties of the discharge injunction in large bold-face underlined type:

> **"Collection of Discharged Debts Prohibited"**
>
> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take other action to collect a discharged debt from the debtor. . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

(Doc. No. 9). The Discharge of Debtor was issued to Aurora on October 26, 2008 (Doc. No. 34).

### Post-discharge Events

John C. Brock ("Brock"), as counsel for Aurora, filed on January 2, 2009 a Notice of Appearance (Doc. No. 39) and a Motion for Relief from Stay (Doc. No. 40) seeking relief from the automatic stay regarding the Debtor's Leland Archer property. An Order was entered on January 27, 2009 (Doc. No. 41) granting Aurora stay relief.

Brock, as counsel for Greenpoint Mortgage Funding, Inc., had previously filed a Notice of Appearance on July 28, 2008 and a Motion for Relief from Stay relating to a property located at 4761 Blue Major Drive, Windermere, Florida 34786 (Doc. Nos. 10, 11). Brock had knowledge of the Debtor's bankruptcy case as early as July 28, 2009.

Aurora began contacting the Debtor by telephone in January 2009 attempting to collect alleged mortgage arrearages for the Leland Archer property. The Debtor joined his counsel E. Juan Lynum by teleconference into a call from Aurora on or about January 26, 2009 during which Aurora attempted to collect the discharged debt. Counsel called the telephone number of 1–800–669–0102, which appeared on the Debtor's caller identification screen, and spoke with an Aurora account representative who stated Aurora's system showed the Leland Archer property was "in bankruptcy."

Debtor's counsel sent a letter on February 3, 2009 via facsimile to Brock at his address of record advising him the Debtor had received a discharge and of Aurora's telephone calls.[1] Brock did not respond.

Aurora placed three calls to the Debtor from February 3, 2009 through February 9, 2009 attempting to collect the debt. Debtor's counsel sent a letter on February 9, 2009 via facsimile to Brock advising him of Aurora's attempts to collect a discharged debt.[2] Brock did not respond.

Aurora continued to call the Debtor on a daily basis attempting to collect the discharged debt and persisted despite the

---

1. Debtor's Exh. No. 1.

2. Debtor's Exh, No. 2.

Debtor's filing of the Motion for Sanctions on March 24, 2009, which was served on Brock at his address of record. The Debtor documented, by a telephone log, tape recordings, and photographs of his caller identification screen, he received forty-one telephone calls from Aurora from February 9, 2009 through May 2, 2009.[3] The Debtor documented a total of forty-four telephone calls from Aurora from January 26, 2009 through May 2, 2009.

The calls apparently ceased when the Notice of Evidentiary Hearing on the Motion was issued to Aurora via mail and Brock via CM/ECF notification on April 3, 2009 (Doc. Nos. 44, 45).

Aurora received notice of the Debtor's discharge through communications from the Court, the Debtor, and Debtor's counsel. Aurora knew the mortgage debt had been discharged and the statutory discharge injunction arose on October 24, 2008. Aurora's telephone calls to the Debtor constitute attempts by Aurora to collect a discharged debt from the Debtor. Each telephone call constitutes a violation of the Debtor's discharge injunction. Aurora intended its actions which violated the discharge injunction. It willfully violated the Debtor's discharge injunction.

Aurora is in contempt of the Debtor's discharge injunction. The Debtor's discharge constitutes an order of this Court necessary to effectuate the Debtor's fresh start. Aurora's behavior was intentional, egregious, and extreme. It blatantly and willfully ignored the discharge injunction, despite its active participation in this case and having received multiple notices of the discharge. Aurora acted in bad faith. Its repeated telephone calls to the Debtor were vexatious, wanton, and oppressive. Aurora committed forty-four separate will-ful violations of the Debtor's discharge injunction.

The Debtor has suffered actual damages as a result of Aurora's willful violations of the discharge injunction. His damages include significant aggravation, emotional distress, inconvenience, and attorneys' fees and costs. Aurora caused him to suffer and incur such damages on forty-four separate occasions. He suffered and incurred these damages as a direct result of Aurora's actions.

The Debtor's significant aggravation, emotional distress, and inconvenience are readily apparent and do not require the presentation of medical evidence. The aggravation, emotional distress, and inconvenience were directly caused by Aurora. Aurora's conduct was so egregious and extreme it would ordinarily be expected to cause significant aggravation, emotional distress, and inconvenience. The Debtor is entitled to actual damages in the amount of $100.00 per telephone call, for a total award of $4,400.00 for actual damages for significant aggravation, emotional distress, and inconvenience.

The Debtor incurred attorneys' fees and costs as actual damages resulting from Aurora's actions. E. Juan Lynum ("Lynum") performed services for the Debtor on an hourly basis. Robert B. Branson ("Branson") provided services to the Debtor on a combined hourly and contingency fee basis. A total fee award of $5,000.00 for counsels' services is reasonable based upon the work performed and results achieved, with counsel to share the award based upon their fee agreements with the Debtor.

The Debtor is entitled to an award of actual damages of $9,400.00 pursuant to the Court's statutory and inherent contempt powers.

---

3.  Debtor's Exh. No. 3.

Punitive damages are due to be imposed against Aurora. Aurora's forty-four violations of the discharge injunction were intentional and egregious actions. Aurora's conduct warrants an award of punitive damages of $20,000.00 pursuant to the Court's statutory and inherent contempt powers.

### CONCLUSIONS OF LAW

■ The discharge injunction of 11 U.S.C. Section 524(a) automatically and immediately arose upon entry of the Debtor's discharge enjoining:

> ... the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2). Section 524 "embodies the 'fresh start' concept of the bankruptcy code." *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1388–89 (11th Cir.1996).

■ Bankruptcy Courts are empowered to award debtors actual damages for violations of the Section 524 discharge injunction pursuant to their statutory contempt powers deriving from 11 U.S.C. Section 105. *Id.* at 1389. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

■ Bankruptcy Courts, in addition to their statutory contempt powers, have inherent contempt powers to sanction conduct "which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Conduct abusive of the judicial process includes "bad faith conduct" and "willful disobedience of a court order." *Id.* at 45–46, 111 S.Ct. 2123. Bad faith conduct includes "hampering enforcement of a court order," and vexatious, wanton or oppressive conduct. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir.1998) (*citation omitted*); *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1575 (11th Cir.1995).

■ A creditor may be held liable for contempt pursuant to Section 105(a) for willfully violating the permanent injunction of 11 U.S.C. Section 524. *In re Hardy*, 97 F.3d at 1390. Conduct is willful if the creditor: "1) knew that the discharge injunction was invoked and 2) intended the actions which violated the discharge injunction." *Id.* (applying the *Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1555 (11th Cir.1996) test to Section 524 discharge injunction violations).

■ The subjective beliefs or intent of the creditor are irrelevant. *In re Hardy*. 97 F.3d at 1390; *In re Jove*, 92 F.3d at 1555. Receipt of notice of a debtor's discharge is sufficient to establish the knowledge element of the two-part test. *In re Hardy*, 97 F.3d at 1390; *In re Jove*, 92 F.3d at 1555–56.

■ Aurora had notice of the Debtor's bankruptcy case from the onset of the case and notated in its computer system the Debtor is in bankruptcy. It participated in the Debtor's bankruptcy case. It filed a Notice of Appearance and obtained relief from stay regarding the Leland Archer property. Its counsel Brock was involved in the case as early as July 28, 2008 and actively participated in the case. Aurora

received notice of the Debtor's discharge through communications from the Court, the Debtor, and Debtor's counsel.

Aurora knew the mortgage debt had been discharged pursuant to 11 U.S.C. Section 727 and the statutory discharge injunction arose on October 24, 2008 pursuant to 11 U.S.C. Section 524(a). Aurora's post-discharge communications to the Debtor regarding alleged mortgage arrearages constitute acts to collect or recover a discharged debt as a person liability of the Debtor. Each telephone call constitutes a violation of the Debtor's discharge injunction.

Aurora's actions constitute willful and intentional violations of the Debtor's discharge injunction. *In re Hardy*, 97 F.3d at 1390; *In re Jove*, 92 F.3d at 1555. Aurora knew the discharge was entered and intended its actions which violated the discharge injunction. It is in contempt of Court for its continuous and repeated failures to honor the discharge injunction of 11 U.S.C. Section 524(a). 11 U.S.C. §§ 524(a), 105(a); *In re Hardy*, 97 F.3d at 1390; *In re Jove*, 92 F.3d at 1555. Aurora committed forty-four separate willful violations of the discharge injunction.

Aurora's repeated failures to honor the discharge injunction are intentional, egregious, and extreme. It acted in bad faith. Its conduct was vexatious, wanton, and oppressive. The Debtor's discharge constitutes an order of this Court essential to the Debtor's fresh start. Aurora willfully disobeyed the discharge injunction.

The Debtor has suffered actual damages as a direct result of Aurora's willful actions. Aurora caused him to suffer significant aggravation, emotional distress, and inconvenience each time it called him post-discharge. It caused him to suffer significant aggravation, emotional distress and inconvenience on forty-four separate occa-

sions. It caused him to incur attorney's fees and costs.

██ The Debtor is entitled to an award of actual damages pursuant to 11 U.S.C. Section 105(a). *In re Hardy*, 97 F.3d at 1389. The Debtor is entitled to an award of actual damages pursuant to the Court's inherent powers. *Chambers*, 501 U.S. at 44–45, 111 S.Ct. 2123; *Barnes v. Dalton*, 158 F.3d at 1214; *In re Mroz*, 65 F.3d at 1575.

██ Emotional distress constitutes actual damages. *In re Nibbelink*, 403 B.R. 113, 120–21 (Bankr.M.D.Fla.2009). Emotional distress is expected to occur where the conduct is egregious or extreme. *Id.* at 120. Significant emotional distress is readily apparent where the conduct is egregious and corroborating medical evidence is not required. *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1150 (9th Cir.2004). Entitlement to emotional distress damages exists "even in the absence of an egregious violation, if the individual in fact suffered significant emotional harm and the circumstances surrounding the violation make it obvious that a reasonable person would suffer significant emotional harm." *Id.* at 1151.

██ The Debtor's emotional distress is readily apparent due to Aurora's intentional, egregious, and extreme conduct. He is not required to present corroborating medical evidence. *In re Nibbelink*, 403 B.R. at 120; *In re Dawson*, 390 F.3d at 1150–51. The Debtor is entitled to actual damages for significant emotional distress, aggravation, and inconvenience in the amount of $100.00 per telephone call, for a total award of $4,400.00 for actual damages for emotional distress.

██ Attorneys' fees and costs constitute actual damages that may be awarded in a discharge violation proceeding pursu-

ant to the reasonableness criteria of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–718 (5th Cir.1974). *In re Nibbelink*, 403 B.R. at 122. The Debtor has incurred attorneys' fees and costs for services provided by Lynum and Branson. A total fee award of $5,000.00 for Lynum's and Branson's services is reasonable after consideration of the *Johnson* factors.

The Debtor is entitled to an award of actual damages of $9,400.00 pursuant to the Court's statutory and inherent contempt powers.

This Court's authority to impose punitive damages against Aurora must be considered in light of the holding of the United States Court of Appeals for the Eleventh Circuit in *In re Hardy* that punitive damages could not be imposed against the IRS for its violation of the discharge injunction pursuant to the sovereign immunity provision of 11 U.S.C. Section 106(a)(3). *In re Hardy*, 97 F.3d at 1390, 1391. One Court has held the *Hardy* decision "is not a blanket repudiation of punitive damages for a violation of the discharge injunction, but instead was limited to a rejection of punitive damages in the context of a waiver of sovereign immunity." *In re Nibbelink*, 403 B.R. at 121 (awarding punitive damages against secured lender for violation of discharge injunction where its conduct was intentional and egregious).

This matter does not involve the waiver of sovereign immunity. Aurora is a nongovernmental entity. Aurora's actions warrant the imposition of punitive damages. Its actions were intentional and egregious. It willfully violated the Debtor's discharge injunction forty-four times. An award of punitive damages of $20,000.00 is warranted pursuant to the Court's Section 105(a) statutory powers and inherent powers to sanction wrongful conduct.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Aurora violated the Debtor's discharge injunction of 11 U.S.C. Section 524(a) and an award of actual damages of $9,400.00 and punitive damages of $20,000.00 are appropriate pursuant to 11 U.S.C. Section 105(a) and the Court's inherent powers; and it is further

**ORDERED, ADJUDGED and DECREED** the Debtor's Motion is hereby **GRANTED;** and it is further

**ORDERED, ADJUDGED and DECREED** that the following persons are hereby awarded damages pursuant to 11 U.S.C. Sections 524(a) and 105(a) and the Court's inherent powers against Aurora, with such amounts to be paid by Aurora forthwith: (i) Debtor's counsel E. Juan Lynum and Robert B. Branson in the amount of $5,000.00 for attorney's fees and costs constituting actual damages, with counsel to share the award based upon their fee agreements with the Debtor; and (ii) Debtor A.G. Waseem in the amount $24,400.00, consisting of $4,400.00 for actual damages and $20,000.00 for punitive damages; and it is further

**ORDERED, ADJUDGED and DECREED** that Aurora is hereby enjoined pursuant to 11 U.S.C. Sections 524(a) and 105(a) from taking any further collection action against the Debtor; and it is further

**ORDERED, ADJUDGED and DECREED** that the Court retains jurisdiction to assess whether the imposition of additional sanctions may be appropriate.

A separate Judgment consistent with these findings and rulings shall be entered contemporaneously.

### *JUDGMENT*

This matter came before the Court on the Motion for Order for Contempt (Doc.

574

No. 43) filed by the Debtor A.G. Waseem, f/k/a Alton Eugene Glasco, against Aurora Loan Services, LLC. An evidentiary hearing was held on May 4, 2009 at which the Debtor and his counsel appeared. In conformity with and pursuant to the **Order** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED and DE-CREED** that **JUDGMENT** is hereby entered, pursuant to 11 U.S.C. Sections 524(a) and 105(a), in favor of the Debtor A.G. Waseem, f/k/a Alton Eugene Glasco, and against the Aurora Loan Services, LLC in the amount of $29,400.00 plus interest at the applicable federal judgment rate until paid, with such judgment amount to be paid as follows: (i) $5,000.00 to E. Juan Lynum and Robert B. Branson, jointly; and (ii) $24,400.00 to A.G. Waseem; and it is further

**ORDERED, ADJUDGED and DE-CREED** that for the foregoing sums let execution issue.